**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **ANTWOINE BEALER,** | **1:16-cv-00671-LJO-MJS** |
| **Plaintiff,** | **SCREENING ORDER DISMISSING COMPLAINT (Doc. 1) WITH LEAVE TO AMEND** |
| **v.** | |
| **SEC'Y of CALIFORNIA DEP'T OF CORRECTIONS and WARDEN OF KERN VALLEY STATE PRISON,** | |
| **Defendants.** | |

## I. <u>INTRODUCTION</u>

Plaintiff is a state prisoner currently incarcerated at Corcoran State Prison in Corcoran, California. Plaintiff brings this pro se civil rights complaint pursuant to 42 U.S.C. § 1983 ("§ 1983") against the Secretary of California Department of Corrections and the Warden of Kern Valley State Prison. For the following reasons, Plaintiff's complaint is dismissed with leave to amend.

## II. <u>SCREENING REQUIREMENT AND STANDARD</u>

The Court is required to screen complaints brought by prisoners seeking relief against a government entity, or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are frivolous, malicious, fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). The § 1915A screening standard "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)." *Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012). When a plaintiff is proceeding in forma pauperis but § 1915A does not apply, "the court 'shall dismiss

1

1   the case at any time if the court determines' that the action 'is frivolous or malicious,' 'fails to state a

2   claim on which relief may be granted,' or 'seeks monetary relief against a defendant who is immune

3   from such relief.'" *Pierce v. San Francisco Exam'r*, No. 15-CV-06051-EMC, 2016 WL 2851649, at *1

4   (N.D. Cal. May 16, 2016) (quoting 28 U.S.C. § 1915(e)(2)).  An inmate who has had three or more prior

5   actions or appeals dismissed on one of these three bases, and has not alleged imminent danger of serious

6   physical injury, does not qualify to proceed in forma pauperis.  *See* 28 U.S.C. § 1915(g).

7   A complaint must contain "a short and plain statement of the claim showing that the pleader is

8   entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but

9   "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do

10   not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550

11   U.S. 544, 555 (2007)).  While a plaintiff's allegations are taken as true, courts are "not required to

12   indulge unwarranted inferences."  *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.2d 1049, 1064

13   (9th Cir. 2008).

14   Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally

15   construed and to have any doubt resolved in their favor.  *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir.

16   2010).  To survive screening, a plaintiff's claims must be facially plausible, which requires sufficient

17   factual detail to allow the Court to reasonably infer that each named defendant is liable for the

18   misconduct alleged.  *Iqbal*, 556 U.S. at 678.  The mere possibility that a defendant acted unlawfully is

19   not sufficient.  *Id*.

20   ### III. PLAINTIFF'S ALLEGATIONS

21   All facts are taken from Plaintiff's first amended complaint and assumed to be true only for the

22   purpose of this screening.  Plaintiff was incarcerated at Kern Valley State Prison at some point before he

23   filed this complaint.  *Id*.  On an unspecified date between January and May of 2014, Plaintiff was forced

24

25

2

1    to take a drug test.  Doc. 1 at 4-5.[1]  Shortly before the drug test, an Officer Stinson entered Plaintiff's

2    cell and turned on the light while Plaintiff was on his bunk.  Doc. 1 at 5.  Plaintiff stood up from his

3    bunk "ready to defend [himself]."  *Id.*  After a short conversation Officer Stinson took Plaintiff to the

4    shower where he was searched.  *Id.*  Plaintiff was told to bend over and spread his buttocks.  *Id.*  Officer

5    Stinson commented "I like that."  *Id.*  Officer Stinson told Plaintiff that he had received a "kite" stating

6    that Plaintiff possessed drugs.  *Id.*  No drugs were found on Plaintiff or in his cell, and the drug test

7    performed on a subsequent date was negative.  Doc. 1 at 6.

8         Plaintiff subsequently sought and exhausted the administrative remedies available to him.  Doc.

9    1 at 3.[2]  Plaintiff alleges that the "kite" on which Officer Stinson based his search was fabricated.  Doc.

10   1 at 6.  He alleges that the drug test performed between January and May of 2014 was ordered in

11   retaliation for a lawsuit Plaintiff had previously filed.  Doc. 1 at 5.  Plaintiff alleges that he was illegally

12   searched and that the seizure of his urine violated his privacy, and that the actions taken by Kern Valley

13   State Prison constituted cruel and unusual punishment in violation of the Eighth Amendment.  Doc. 1 at

14   6.  He also alleges that the random drug testing policy is unconstitutional and that he was deprived of

15   due process of law.[3]  Doc. 1 at 5.  Plaintiff seeks nominal, punitive, and compensatory damages.  Doc. 1

16   at 1, 6.

17                                   **IV. <u>ANALYSIS</u>**

18        Plaintiff's complaint, liberally construed, alleges that his constitutional rights and § 1983 were

19   violated by two separate but related actions.  First, Plaintiff alleges that he was subjected to a drug test

20   _____

21   [1] Plaintiff does not clarify how the drug test was performed, but he references the seizure of his urine in his complaint, suggesting that the drug test included urinalysis.  *See* Doc. 1 at 6.

22   [2] On or around July 27, 2015, Plaintiff was transferred from Kern Valley State Prison to Corcoran State Prison Security Housing Unit, at which time the prison seized Plaintiff's copies of documents pertaining to his administrative remedies.

23

24   [3] Plaintiff cites the "IXV Amendment to the Constitution."  Doc. 1 at 5.  The Court understands that Plaintiff is referring to the Fourteenth (XIV) Amendment.

25

1   which was purported to be random but was in fact targeted retaliation for a lawsuit he had filed.  Second,

2   Plaintiff alleges that the search of his person and cell, which included a visual body cavity search, was

3   prompted by a fabricated "kite" and not motivated by a legitimate penological interest.

4          Plaintiff's complaint fails to set forth a cognizable claim for a number of reasons.  Plaintiff may

5   be able to amend his complaint so as to correct the deficiencies and state one or more cognizable claims.

6   Therefore, the Court is providing Plaintiff with notice of the applicable standards, and leave to file an

7   amended complaint.

8   **A.    Linkage**

9          Section 1983 provides:

10
11
12
> Every person who, under color of [state law] . . . subjects, or causes to be
> subjected, any citizen of the United States . . . to the deprivation of any
> rights, privileges, or immunities secured by the Constitution . . . shall be
> liable to the party injured in an action at law, suit in equity, or other proper
> proceeding for redress.

13   The statute explicitly requires that there be an actual connection or link between the actions of the

14   defendants and the deprivation alleged to have been suffered by the plaintiff.  *See Monell v. Dep't of*

15   *Soc. Services*, 436 U.S. 658, 692-95 (1978).  The Ninth Circuit has held that "[a] person 'subjects'

16   another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an

17   affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally to

18   do that causes the deprivation."  *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

19          In order to state a claim for relief under § 1983, Plaintiff must link each named Defendant with

20   some affirmative act or omission that demonstrates a violation of Plaintiff's federal rights.  Plaintiff has

21   not alleged any facts which link either the Secretary of the California Department of Corrections or the

22   warden of Kern Valley State Prison, who are the Defendants named in the complaint's caption, with a

23   violation of his federal rights.[4]  In order to set forth a valid claim, his complaint must plead specific facts

24   _____

25   [4] Plaintiff names Officer Stinson in his recitation of facts, but does not list him as a defendant.  If Plaintiff intends to pursue

1    demonstrating how Defendants are linked to Plaintiff's alleged deprivations of federal rights.

2          Further, the two defendants named in this action are both supervisors.  Supervisory personnel are

3    generally not liable under § 1983 for the actions of their employees under a theory of *respondeat*

4    *superior*, and when a named defendant holds a supervisory position a causal link between him or her and

5    the alleged misconduct must be specifically alleged.  *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir.

6    1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978).  To state a claim for relief under § 1983

7    based on a theory of supervisory liability, Plaintiff must allege some facts that would support a claim

8    that the supervisory defendants personally participated in the deprivation of federal rights, knew of the

9    violations and failed to act to prevent them, or "implemented a policy so deficient that the policy 'itself

10   is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'"

11   *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (quoting *Thompkins v. Belt*, 828 F.2d 298, 303-04

12   (5th Cir. 1987)).  Plaintiff has not alleged any facts indicating that either Defendant personally

13   participated in the deprivation of any of his federal rights, knew of and failed to act to prevent any

14   violations, or implemented a deficient policy.  Plaintiff therefore has not stated any claim under § 1983.

15   **B.    Fourth Amendment Claims**

16       **1.    <u>Drug Testing</u>**

17         Compelled urinalysis is a search or seizure within the scope of the Fourth Amendment.  *Skinner*

18   *v. Ry. Labor Executives' Ass'n*, 489 U.S. 602, 617 (1989).  The Fourth Amendment prohibits

19   unreasonable searches.  *Bell v. Wolfish*, 441 U.S. 520, 558 (1979).  In correctional institutions,

20   determining whether a search is reasonable requires "[b]alancing the significant and legitimate security

21   interests of the institution against the privacy interests of the inmates."  *Id*. at 560.  However, "prison

22   administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies

23   and practices that in their judgment are needed to preserve internal order and discipline and to maintain

24   

25   claims against Officer Stinson, he must appropriately identify him as a defendant in this action.

1    institutional security." *Id*. at 547.

2          While Plaintiff referred to his drug test as "random," his allegations suggest that the test was a

3    non-random act of retaliation.[5]   In *Thompson v. Souza*, The Ninth Circuit held that, though drug testing

4    of prisoners for the purpose of combatting the presence of illicit drugs is reasonably related to legitimate

5    penological interests, such testing must be reasonable in place, justification, scope, and manner.  111

6    F.3d 694, 702 (9th Cir. 1997).  Testing which is performed for the purpose of harassment or retaliation is

7    not reasonable.  *See id.* ("The requirement of random drug tests stems from a concern that correctional

8    officials could harass particular inmates by subjecting them to repeated drug tests."); *see also Forbes v.*

9    *Trigg*, 976 F.2d 308, 315 (7th Cir. 1992) (noting the danger that correctional officials could harass

10   particular inmates by repeated drug testing); *Spence v. Farrier*, 807 F.2d 753, 755 (8th Cir. 1986) ("[I]t

11   is important to insure that when the state chooses to employ [random testing], the procedures for

12   selecting the inmates to be tested are truly random.").  Therefore, Plaintiff's Fourth Amendment claim

13   for drug testing conducted for the purpose of harassment and retaliation is a viable claim, except that he

14   has not linked the testing to any named Defendant, as explained *supra*.

15          2.    **Visual Body Cavity Search**

16          The Fourth Amendment prohibits only unreasonable searches.  *Bell*, 441 U.S. at 558.  Courts

17   regularly recognize the importance and difficulty of keeping detention facilities free from drugs,

18   weapons, and other contraband.  *See*, *e.g.*, *id.*; *Way v. Cnty. Of Ventura*, 45 F.3d 1157, 1161 (9th Cir.

19   2006).  On the other hand, courts also recognize the "frightening and humiliating invasion" occasioned

20   by a strip search "even when conducted with all due courtesy."  *Byrd v. Maricopa Cnty. Sheriff's Dep't*,

21   629 F.3d 1135, 1143 (9th Cir. 2011) (internal quotation marks omitted).  While some strip or visual

22   _____

23   [5] To the extent Plaintiff is alleging that a random drug test policy is unconstitutional, he has not pled sufficient facts to set

24   forth a claim.  Plaintiff has not alleged any particular facts regarding the existence of a random drug test policy in California

25   prisons, the provisions of such a policy, or why the policy would be unconstitutional.

body cavity searches of prisoners may be reasonable, others can "be excessive, vindictive, harassing, or unrelated to any legitimate penological interest." *Michenfelder v. Sumner*, 860 F.2d 328, 322 (9th Cir. 1988). There is no *per se* rule; the validity of a search procedure "requires a balancing of the need for the particular search against the invasion of personal rights that the search entails." *Bell*, 441 U.S. at 559. The plaintiff "bears the burden of showing [prison officials] intentionally used exaggerated or excessive means to enforce security." *Thompson*, 111 F.3d at 700 (citing *Michenfelder*, 860 F.2d at 333). In *Thompson*, the Ninth Circuit found that a visual body cavity search conducted in full view of other inmates and intended to detect illicit drugs was reasonably related to a legitimate penological interest. *Thompson*, 111 F.3d 701.

Plaintiff's allegations, taken as true, meet his burden of stating a claim that his strip search was unreasonable in manner and justification. While the body cavity search conducted on Plaintiff was visual only, involved no touching, and was conducted out of the view of other inmates, Officer Stinson allegedly made comments which subjected Plaintiff to degrading treatment without any relationship to a legitimate penological objective. Moreover, and more importantly, Plaintiff alleges that the purported "kite" informing prison staff that Plaintiff was in possession of contraband was manufactured pretext. Courts have found that suspicion of contraband is a valid reason to initiate a strip search. *Byrd*, 629 F.3d at 1143 (finding that the occurrence of fights and the suspicion of contraband were valid reasons to search 90 jail inmates). If the claimed suspicion is a pretext, and the true intention of the search is retaliation, however, the search is without a valid justification and is unreasonable. *See Houx v. Koll*, Case No. 15-17094, 2016 WL 6892554, at *1 (9th Cir. Nov. 23, 2016) (unpublished) (holding that allegations that the defendant "conducted an unclothed strip search without cause" set forth a claim). Therefore, his complaint being liberally construed, Plaintiff has stated a cognizable Fourth Amendment claim stemming from the strip search by Officer Stinson, except that Plaintiff has not linked the violation to any named Defendant as explained *supra*.

7

**C.     Other Claims**

In addition to his Fourth Amendment claims, Plaintiff alleges that the drug testing and search violated his Eighth and Fourteenth Amendment rights.  Neither allegation states a viable claim. Plaintiff's allegation that his Eighth Amendment right to be free from cruel and unusual punishment was violated is conclusory, and is not supported by the facts alleged.  Two requirements must be met for a prison official to have violated the Eighth Amendment.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). First, the deprivation alleged must be sufficiently serious, that is, resulting in the denial of "the minimal civilized measure of life's necessities."  *Id.* (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). Second, the prison official must have the sufficiently culpable state of mind, which in prison conditions cases is deliberate indifference to inmate health or safety.  *Farmer*, 511 U.S. at 834.

Plaintiff has not alleged that either the search of his person or the seizure of his urine amounted to a denial of "the minimal civilized measure of life's necessities."  The Court has not located any authority suggesting that a drug test or search necessarily rises to such a level.  *See, e.g.*, *Curtis v. Padua*, Case No. 1:15-cv-01682-MJS, 2015 WL 7017047, at *3 (E.D. Cal. Nov. 12, 2015) ("Plaintiff's challenge to the urine testing as violative of the Eighth Amendment fails because there is no suggestion that the testing is, objectively, sufficiently serious to satisfy the first prong of an Eighth Amendment analysis.").  Nor has Plaintiff alleged that any Defendant acted with deliberate indifference by knowing of and disregarding an excessive risk of physical or mental harm to him.

Plaintiff has pled that the drug testing and search were intended as retaliation and harassment, against which the Eighth Amendment does protect.  *Vigliotto v. Terry*, 873 F.2d 1201, 1203 (9th Cir. 1989) ("The Eighth Amendment protects prisoners from searches conducted only for calculated harassment." (internal quotation marks omitted)).  He has not, however, pled any facts which establish a link between the allegedly harassing conduct and either Defendant.  Even if he had, he has not pled facts which would satisfy the first prong of an Eighth Amendment claim.  Therefore, Plaintiff's Eight Amendment claim has not met its pleading burden and is dismissed with leave to amend.

Plaintiff also has not set forth a valid Fourteenth Amendment claim. Specifically, Plaintiff has not alleged that any particular due process right protected by the Fourteenth Amendment was violated. The Due Process Clause protects prisoners from being deprived of liberty or property without due process of law. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). In order to state a cause of action for deprivation of due process, a plaintiff must first establish the existence of a protected liberty interest. "States may under certain circumstances create liberty interests which are protected by the Due Process Clause." *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995). Liberty interests created by state law are generally limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.*

Plaintiff has not pled any facts indicating that he has been subject to a deprivation of liberty apart from the brief search of his person and the seizure of his urine for testing. He has not alleged that he was disciplined as a result of the search, for example. The bare statement that due process was not afforded to Plaintiff does not contain or reference sufficient facts to permit an inference that a violation occurred. Therefore, Plaintiff has failed to set forth a cognizable Fourteenth Amendment due process claim, and his Fourteenth Amendment claim is dismissed with leave to amend.

## V. <u>CONCLUSION AND ORDER</u>

For the reasons stated, Plaintiff's complaint fails to state a claim upon which relief may be granted. Accordingly, the Court DISMISSES the complaint with leave to amend. Any amended complaint shall be filed within thirty days of this order.

If Plaintiff elects to amend his complaint, he may not change the nature of this suit by alleging new, unrelated claims. *See Aul v. Allstate Life Ins. Co.*, 993 F.2d 881, 884 (9th Cir. 1993) ("A claim based on different rights and established by different transactional facts will be a different cause of action."); *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) ("Unrelated claims against different defendants belong in different suits."). Plaintiff's amended complaint should be brief, Fed. R. Civ. P. 8(a), but must state what each named defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights. *Iqbal*, 556 U.S. at 677. "The inquiry into causation must be individualized and

9

focus on the duties and responsibilities of each named defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988).  Although accepted as true, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  Finally, an amended complaint supersedes the original complaint, *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997), and must be "complete in itself without reference to the prior or superseded pleading."  Local Rule 220.  "All causes of action alleged in an original complaint which are not alleged in an amended complaint are waived."  *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987) (citation omitted).  Thus, any amended complaint must be written or typed so that it so that it is complete in itself without reference to any earlier filed complaint.  Local Rule 220.

If Plaintiff fails to comply with this Order, this case will be dismissed with prejudice for failure to obey a court order and failure to prosecute.  The Court also cautions Plaintiff that failure to comply with the Federal Rules of Civil Procedure, this Court's Local Rules, or any court order may result in this action being dismissed. *See* Local Rule 110.

IT IS SO ORDERED.

Dated:   **December 16, 2016**             **/s/ Lawrence J. O'Neill**
UNITED STATES CHIEF DISTRICT JUDGE