UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTWOINE BEALER,<br><br>          Plaintiff,<br><br>v.<br><br>OFFICER STINSON,<br><br>          Defendant. | Case No. 1:16-cv-00671-LJO-JDP<br><br>FINDINGS AND RECOMMENDATIONS THAT<br>  (1) DEFENDANT'S MOTION FOR SUMMARY JUDGMENT FOR FAILURE TO EXHAUST BE GRANTED IN FULL<br>  (2) ALL OTHER PENDING MOTIONS BE DENIED AS MOOT<br>  (3) THIS CASE BE DISMISSED WITHOUT PREJUDICE<br><br>ECF Nos. 59, 60, 65, 68, 69, 73, 74<br><br>OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN (14) DAYS |

    Plaintiff Antwoine Bealer is a state prisoner proceeding without counsel in this civil rights action brought under 42 U.S.C. § 1983. This action proceeds on plaintiff's second amended complaint in which he stated a Fourth Amendment claim against defendant Stinson. ECF No. 32; ECF No. 35. On April 2, 2018, defendant moved for summary judgment under Federal Rule of Civil Procedure 56, arguing that plaintiff failed to exhaust available administrative remedies. ECF No. 59. Plaintiff filed an opposition on June 20, 2018, ECF No. 70, and defendant filed a reply on June 25, 2018, ECF No. 72. The motion was submitted on

the record without oral argument under Local Rule 230(*l*).[1]  Defendant's motion for summary judgment is now before the court, and we will recommend granting it.

**I.     LEGAL STANDARDS**

   **A. Summary Judgment Standard**

The "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).  Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In addition, Rule 56 allows a court to grant summary adjudication, also known as partial summary judgment, when there is no genuine issue of material fact as to a particular claim or portion of that claim. Fed. R. Civ. P. 56(a); *see also Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 769 n.3 (9th Cir. 1981) ("Rule 56 authorizes a summary adjudication that will often fall short of a final determination, even of a single claim . . . .") (internal quotation marks and citation omitted).  The standards that apply on a motion for summary judgment and a motion for summary adjudication are the same.  *See* Fed. R. Civ. P. 56(a), (c); *Mora v. Chem-Tronics*, 16 F. Supp. 2d 1192, 1200 (S.D. Cal. 1998).

Summary judgment, or summary adjudication, should be entered "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party bears the "initial responsibility" of demonstrating the absence of a genuine issue of material fact.  *Id.* at 323.  An issue of material fact is genuine only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, while a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby,*

---

[1] As required by *Rand v. Rowland*, 154 F.3d 952, 962-63 (9th Cir. 1998), plaintiff was provided with notice of the requirements for opposing a summary judgment motion for failure to exhaust administrative remedies via an attachment to the defendant's motion for summary judgment. ECF No. 59-1.

2

*Inc.*, 477 U.S. 242, 248 (1986); *Wool v. Tandem Computers, Inc.*, 818 F.2d 1422, 1436 (9th Cir. 1987). A party demonstrates that summary adjudication is appropriate by "informing the district court of the basis of its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323 (quoting Fed. R. Civ. P. 56(c)).

If the moving party meets its initial burden, the burden then shifts to the opposing party to present specific facts that show there to be a genuine issue of a material fact. *See* Fed R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 586. An opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 587. The party is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that a factual dispute exists. Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586 n.11. The opposing party is not required to establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Electrical Serv., Inc. v. Pacific Elec. Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir. 1987). However, "failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

The court must apply standards consistent with Rule 56 to determine whether the moving party demonstrated there to be no genuine issue of material fact and showed judgment to be appropriate as a matter of law. *See Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993). "[A] court ruling on a motion for summary judgment may not engage in credibility determinations or the weighing of evidence." *Manley v. Rowley,* 847 F.3d 705, 711 (9th Cir. 2017) (citation omitted). The evidence must be viewed "in the light most favorable to the nonmoving party" and "all justifiable inferences" must be drawn in favor of the nonmoving party. *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 772 (9th Cir. 2002); *accord Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

In a summary judgment motion for failure to exhaust, the defendants have the initial burden to establish "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." *Albino II*, 747 F.3d at 1172. If the defendants carry that burden, "the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* The ultimate burden of persuasion remains with defendants, however. *Id.* "If material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." *Id.* at 1166.

### B. Exhaustion Requirement

Under the Prison Litigation Reform Act of 1995, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This statutory exhaustion requirement "applies to all inmate suits about prison life," *Porter v. Nussle*, 534 U.S. 516, 532 (2002), regardless of the relief sought by the prisoner or the relief offered by the process, *Booth v. Churner*, 532 U.S. 731, 741 (2001). Unexhausted claims require dismissal. *See Jones v. Bock*, 549 U.S. 199, 211 (2007).

A prison's own grievance process, not the PLRA, determines how detailed a grievance must be to satisfy the PLRA exhaustion requirement. *Id.* at 218. When a prison's grievance procedures do not specify the requisite level of detail, "a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought." *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009) (internal quotation marks omitted). "The grievance 'need not include legal terminology or legal theories,' because '[t]he primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation.'" *Reyes v. Smith*, 810 F.3d 654, 659 (9th Cir. 2016) (alteration in original) (quoting *Griffin*, 557 F.3d at 1120).

The PLRA recognizes no exception to the exhaustion requirement, and the court may not recognize a new exception, even in "special circumstances." *Ross v. Blake*, 136 S. Ct.

4

1850, 1862 (2016). The one significant qualifier is that "the remedies must indeed be 'available' to the prisoner." *Id.* at 1856. The Supreme Court has explained when an administrative procedure is unavailable:

> [A]n administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates. . . . Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. . . . And finally, the same is true when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation. . . . [S]uch interference with an inmate's pursuit of relief renders the administrative process unavailable. And then, once again, § 1997e(a) poses no bar.

*Id.* at 1859-60 (citations omitted); *see also Andres v. Marshall*, 867 F.3d 1076, 1079 (9th Cir. 2017) ("When prison officials improperly fail to process a prisoner's grievance, the prisoner is deemed to have exhausted available administrative remedies.").

If the court concludes that plaintiff has failed to exhaust available remedies, the proper remedy is dismissal without prejudice of the portions of the complaint barred by § 1997e(a). *See Jones*, 549 U.S. at 223-24; *Lira v. Herrera*, 427 F.3d 1164, 1175-76 (9th Cir. 2005).

### C. CDCR's Administrative Remedy Process

Plaintiff is a state prisoner in the custody of the California Department of Corrections and Rehabilitation ("CDCR"), and CDCR has an administrative remedy process for inmate grievances. *See* Cal. Code Regs. tit. 15, § 3084.1 (2016). To exhaust available remedies during the relevant time period, an inmate must proceed through three formal levels of review unless otherwise excused under the regulations. *Id.* § 3084.5. A prisoner initiates the exhaustion process by submitting a CDCR Form 602 "Inmate/Parolee Appeal" ("grievance") within thirty calendar days (1) of the event or decision being appealed, (2) from the time the prisoner first had knowledge of the action or decision being appealed, or (3) from the time the prisoner received an unsatisfactory departmental response to an appeal filed. *Id.* §§ 3084.2(a), 3084.8(b) (quotation marks omitted). The regulation establishes one exception to the thirty-day rule: "There shall be

1  no time limits for allegations of sexual violence or staff sexual misconduct." *Id.* § 3084.2(b)(4).[2]

2  The grievance must "describe the specific issue under appeal and the relief requested," and the inmate "shall list all staff member(s) involved and shall describe their involvement in the issue." *Id.* § 3084.2(a). Furthermore, the inmate "shall state all facts known and available to him/her regarding the issue being appealed at the time of submitting the Inmate/Parolee Appeal Form, and if needed, the Inmate Parolee/Appeal Form Attachment." *Id.* § 3084.2(a)(4). Inmate grievances are subject to cancellation if "time limits for submitting the appeal are exceeded even though the inmate or parolee had the opportunity to submit within the prescribed time constraints." *Id.* § 3084.6(c)(4).

## II. SUMMARY JUDGMENT RECORD

To decide a motion for summary judgment, a district court may consider materials listed in Rule 56(c). Those materials include depositions, documents, electronically-stored information, affidavits or declarations, stipulations, party admissions, interrogatory answers, "or other materials." Fed. R. Civ. P. 56(c). A party may object that an opponent's evidence "cannot be presented in a form that would be admissible" at trial, *see* Fed. R. Civ. P. 56(c)(2), and the court ordinarily rules on evidentiary objections before deciding a summary judgment motion to determine what materials the court may consider. *See Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010); *Fonseca v. Sysco Food Servs. of Arizona, Inc.*, 374 F.3d 840, 845 (9th Cir. 2004). Here, defendants present plaintiff's second amended complaint; the declaration of A. Lucas, an Appeal Coordinator at Kern Valley State Prison ("KVSP"); the declaration of M. Voong, the Chief of the Office of Appeals for the California Department of Corrections and Rehabilitation ("CDCR"); and various supporting documents. ECF No. 32; ECF No. 32-4; ECF No. 32-5. Plaintiff presents his declaration and his mail log from High Desert State Prison. ECF No. 70 at 12-14; ECF No. 71. No party disputes these materials' admissibility.[3]

---

[2] This exception was established and took effect in 2016.
[3] Defendant does, however, argue that plaintiff "fail[s] to supply any substantive declarations or documents in support of his opposition" and that he fails to comply with Local Rule 260(b). ECF No. 72 at 4. Defendant is correct that plaintiff failed to comply with Local Rule 260(b) in

6

The only question here is whether plaintiff has exhausted available administrative remedies for his Fourth Amendment claim against defendant Stinson. In his verified complaint, ECF No. 32, plaintiff makes allegations that are summarized as follows: Plaintiff was incarcerated at KVSP at some point before he filed this complaint. *Id.* at 5-6. On an unspecified date between January and May of 2014, plaintiff was forced to take a drug test, which included urinalysis. *Id.* at 4-5, 6. Shortly before the drug test, Officer Stinson entered plaintiff's cell and turned on the light while plaintiff was on his bunk. *Id.* at 5. Plaintiff stood up from his bunk "ready to defend [him]self." *Id.* After a short conversation, Officer Stinson took plaintiff to the shower and searched him. *Id.* Plaintiff was told to bend over and spread his buttocks. *Id.* Officer Stinson commented, "I like that." *Id.* Officer Stinson told plaintiff that he had received a "kite" stating that plaintiff possessed drugs. *Id.* Plaintiff alleges that there was no such kite and that the drug test performed between January and May of 2014 was ordered in retaliation for a lawsuit plaintiff had previously filed. *Id.* at 4-6.

The parties agree that plaintiff submitted a grievance (KVSP-14-01850) concerning CDCR's random drug-testing policy.[4] The pertinent portion of the grievance, dated May 22, 2014, states:

> My concern . . . is racism and discrimination. I was forced to submit to a[] "random" drug test. I am in prison to do time for robbery, not to be tortured and studied like the chimpanzee. I believe I am being discriminated against because of September 11th, and I read the [Q]uran. I have no drug charges or drug problem, so why am I being "randomly" drug tested. I do not do drugs and I do not sell drugs. It's preposterous that I'm being put on "time out" and inconvenienced, my life thrown off track and the course changed because there are drugs in the prison. I have nothing to do with that, nor is it my responsibility. I would appreciate if CDCR would stop making up things to charge me with, to . . . bring me

---

that he did not cite particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document. While the court could therefore "consider only the cited materials," the court will nonetheless consider plaintiff's motion on the merits. *See* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record.").

[4] Though plaintiff submitted approximately fourteen appeals during the relevant timeframe, plaintiff did not submit any other appeals related to his second amended complaint that were accepted for review. ECF No. 59-4 at 4.

> under the jurisdiction of the law to unjustly and dishonourably use
> as a[] tool to treat me as a[] child in an attempt to emasculate me, in
> turn, stealing my freedom. My constitutional rights, 4, 5, 6 & 8 to
> name a few, were violated.

ECF No. 59-4 at 5. Plaintiff does not mention Officer Stinson, intentional retaliation by Stinson, or an unclothed body search.

The following undisputed facts are drawn from the declaration of Lucas, ECF No. 59-4: The grievance bypassed the first level of review and was received and accepted for review at the second level on May 28, 2014. *Id.* at 4. On June 4, 2014, Correctional Lieutenant Betzinger interviewed plaintiff regarding his grievance, and plaintiff did not provide any additional information about the issue during the interview. *Id.* at 4-5. Plaintiff's appeal was denied at the second level. ECF No. 59-5 at 5-6. The second-level response informed plaintiff that CDCR uses a variety of methods to test inmates for the use of controlled substances "to reduce drug use, to hold individuals accountable for their actions, to provide opportunities for long-term recovery from addiction, and to increase institutional security and public safety." *Id.* Plaintiff was further informed that all CDCR populations "are subject to testing" and that he must continue to participate in the Random Drug Testing Program as required by applicable regulations. *Id.*

The following undisputed facts are drawn from the declaration of Voong, ECF No. 59-7: After plaintiff's denial at the second level, he appealed to the third level of review, stating that he was dissatisfied with the second-level decision. *Id.* at 3. The OOA received plaintiff's appeal and accepted it for review on July 22, 2014. *Id.* OOA denied plaintiff's appeal on September 30, 2014. *Id.* In denying plaintiff's appeal, OOA stated that "drug testing regulations were implemented as a means to deter the use of controlled substances within CDCR." *Id.* OOA further found that there was no evidence KVSP was not in compliance with regulations. *Id.*

### III. DISCUSSION

The court considers whether defendant Stinson has met his burden of producing evidence showing "that there was an available administrative remedy, and that the prisoner did

8

not exhaust that available remedy." *See Albino II*, 747 F.3d at 1172.  Defendant Stinson submits evidence in the form of sworn declarations and supporting documents showing that CDCR had an appellate process available at the time of the incident that involved submission of a standardized grievance form and three levels of review.  ECF No. 59-4; ECF No. 59-7. Defendant Stinson submits further evidence showing that while plaintiff submitted a grievance concerning the prison's drug testing policy through the third level of review, plaintiff failed to mention Stinson, intentional retaliation by Stinson, or an unclothed body search.  ECF No. 59-4 at 4.  Thus, defendant argues, "[p]laintiff failed to place the institution on notice of his claims and therefore failed to satisfy the exhaustion requirement of the PLRA."  ECF No. 59-2 at 8 (citing *Griffin*, 557 F.3d at 1120 ("The primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation.")).  In opposition, plaintiff acknowledges that he did not reference Stinson in his grievance, but he argues that this does not preclude his claim: "My 602 administrative appeal was concerning a[] policy and the injurie(s) suffered due to the policy.  Accordingly, all actions taken to enforce the policy have been exhausted."  ECF No. 70 at 2.

      The court finds defendant's argument persuasive.  As stated above, a prison's own grievance process determines how detailed a grievance must be to satisfy the PLRA exhaustion requirement.  *Jones v. Bock*, 549 U.S. at 218.  To exhaust administrative remedies, California regulations require a grievance to "describe the specific issue under appeal and the relief requested" and to "list all staff member(s) involved and [to] describe their involvement in the issue."  Cal. Code Regs. tit. 15, § 3084.2(a).  The regulations also require the grievance to "state all facts known and available to [the inmate] regarding the issue being appealed at the time of submitting the Inmate/Parolee Appeal Form, and if needed, the Inmate Parolee/Appeal Form Attachment."  *Id.*  By omitting any mention of Officer Stinson, intentional harassment by Stinson, or an unclothed body search in the grievance, plaintiff failed to submit a grievance with the level of detail required for exhaustion by Cal. Code Regs. tit. 15, § 3084.

      Perhaps realizing that his claim is foreclosed by the plain meaning of the text, plaintiff urges a purposive reading of § 3084:

9

> The purpose of CCR § 3084.2(a)(3) is to assist the reviewer in identifying everyone involved in the issue, so the issue can be resolved. As can clearly be seen, I did not name anyone in the 602. The reviewer never asked what staff members were responsible for the violations, because they were already aware of who were responsible . . . .

*Id.* at 3. Even assuming plaintiff's reading of § 3084 is accurate, plaintiff does not point to any evidence that would show that CDCR staff was aware of Stinson's involvement, let alone that his involvement constituted retaliation or was otherwise inappropriate. Instead, plaintiff's grievance put prison officials on notice of his qualms with the drug testing policy—not of any action by Stinson to enforce it.

Since plaintiff was required to "state all facts known and available to him/her regarding the issue being appealed," *id.* § 3084.2(a)(4), and he failed to mention any facts that could support a Fourth Amendment claim, there is no material fact in dispute regarding plaintiff's exhaustion of his claim against defendant Stinson. We recommend that summary judgment be granted for defendant Stinson.[5]

### IV. FINDINGS AND RECOMMENDATIONS

Accordingly, the court recommends that:

1. defendant's motion for summary judgment, ECF No. 59, be granted;

2. all other pending motions, ECF Nos. 60, 65, 68, 69, 73, and 74, be denied as moot; and

3. this case be dismissed without prejudice.

The undersigned submits the findings and recommendations to the district judge under 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within 14 days of the service of the findings and recommendations, plaintiff may file written objections to the findings and recommendations with the court and serve a copy on all parties. That document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the

---

[5] Plaintiff should be aware that current California regulations do not impose a time limitation on the submission of 602 appeals concerning staff sexual misconduct. *See* Cal. Code Regs. tit. 15, § 3084.2(b)(4) (2016) ("There shall be no time limits for allegations of sexual violence or staff sexual misconduct."). Accordingly, it may be possible for plaintiff to file a new 602 appeal concerning any alleged sexual misconduct by Officer Stinson.

findings and recommendations under 28 U.S.C. § 636(b)(1)(C). Plaintiff's failure to file objections within the specified time may result in the waiver of rights on appeal. *See Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:    December 7, 2018                /s/ Jeremy Peterson
                                                          UNITED STATES MAGISTRATE JUDGE